|   |   |
|---|---|
| EDWARD FOGG and MARIA FOGG, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>SELENE FINANCE, LP, a foreign limited liability company, and WILMINGTON SAVINGS FUND SOCIETY, FSB, dba CHRISTINA TRUST, trustee for Premium Mortgage Acquisition Trust,<br><br>Defendants. | No. 3:21-cv-5351-JHC<br><br>DEFENDANTS SELENE FINANCE, LP AND WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED<br><br>Noted for: Friday March, 3. 2023 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

## I.     INTRODUCTION

Discovery has revealed that the Foggs' claims lack merit. Edward and Maria Fogg unilaterally changed their mortgage payment terms, refused to send in payments as requested, and then sued Selene Finance, LP for finding them delinquent. The Foggs admitted in deposition that Selene responded to each of the Foggs' Qualified Written Requests for information and Selene adjusted their mortgage payment pursuant to the Foggs' Chapter 11 Bankruptcy Plan; yet, after multiple notices to submit proper payment, the Foggs ignored Selene and the Foggs' own

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY JUDGMENT - 1

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

intransigence led to their delinquency status. Now, the only damage the Foggs attribute to Selene is speculative and fail as a matter of law. Because their claims lack merit, Selene Finance, LP and Wilmington Savings Fund Society, FSB are entitled to summary judgment.

## II. STATEMENT OF FACTS

**A.  Background.**

Edward and Maria Fogg (collectively the "Foggs") own and manage 28 residential rental properties, one of which is located at 2246 N.E. 86th Avenue, Vancouver, Washington (herein after "the Property"). Wilmington Savings Fund Society, FSB holds the Property's Promissory Note ("Note"), which is secured by a Deed of Trust ("DOT"). [Exhibits A & B]. Selene Finance, LP (herein after "Selene") acts as servicer for the Note and DOT. The Note and DOT (collectively the "Loan") is an escrowed loan that was originally for $171,415 at an adjustable interest rate of 5.875% with a monthly payment of $1,013.85. [Ex. A: ¶ 1-3 ].

The Foggs entered Chapter 11 bankruptcy proceedings and a joint Chapter 11 plan ("Plan") was confirmed on July 2, 2013. [Ex. C]. A final decree was entered in the Chapter 11 case on August 7, 2017. Certain terms of the Plan modify the terms of the Loan. Specifically, the interest rate was changed to 4.5% per annum, the principal balance changed to the secured collateral value of $130,000, and the payment was set at $602.05, exclusive of escrow. [Ex. C: §3.06(A)(1)]

In June 2020, Selene sent a letter to the Foggs saying they had adjusted their Property's account to align with the Plan. [Ex. D, 1:¶ 2-3]. Selene also eliminated fees, reduced the interest rate to 4.3% in order to amortize the loan term over 360 months for the monthly payment required by the Plan, and credited the Foggs for payments made to Fay Servicing, the Loan's previous servicer. [Ex. D, 1:¶ 2-7]. In the same letter, Selene tells the Foggs that they have been remitting monthly payments in two separate checks—one for principal and interest and another for escrow— and due to this a certain number of their payments have been rejected. [Ex. D, 2-3:¶ 8-9]. Selene adds that remitting two checks "will not" advance the Foggs' account. [*Id.*].

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON
SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY
JUDGMENT  - 2

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

In Selene's June 2020 letter, they also discuss the difficulties Mr. Fogg "experienced with [their] Agent in discussing the referenced account." [Ex. D, 1,3:¶ 1, ¶ 4-5]. The agent was Dominique Bailey, and Selene noted that she maintained her "professionalism and followed all company required policies and procedures," further stating that "at no time was Ms. Baily disrespectful or verbally abusive." [Ex. D, 3:¶ 4-5]. Mr. Fogg would tend to disagree, calling Ms. Bailey "one of the most condescending bitches on the phone [he has] ever had the chance to speak with." [Ex. J, 1: ¶ 4]. In the same letter, Mr. Fogg notified Selene he was going to file a lawsuit. [Ex. J, 2: ¶ 3].

## B.     Terms of the Loan and Plan.

The DOT obligates the Foggs to pay a periodic payment, which is the "regularly scheduled amount due for (i) principal and interest under the Note, *plus* (ii) any amounts under Section 3 [Escrow Items]." [Ex. B: ¶ (O) *emphasis added*]. The DOT goes on to say that "lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." [Ex. B: ¶ 1]. Further, the DOT designates that Selene is responsible for applying monthly payments, in order of priority, toward each separate obligation: (i) interest, (ii) principal, then (iii) escrow (taxes and insurance). [Ex. B: ¶ 2]. The Foggs are obligated to pay Selene the escrow amounts, as determined by Selene, unless Selene opts to waive paying escrow, but such waiver must be in writing. [Ex. B: ¶ 3]. Vital here, it is Selene who "shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law." [*Id.*].

Both the Loan documents and Plan hold the Foggs in default if they do not follow the terms. According to the Note, "if [the Foggs] do not pay the full amount of each monthly payment on the date it is due, [they] will be in default." [Ex. A: ¶ 6(B)]. The Plan mirrors this, stating "the reorganized debtor shall be in default to a claim holder if the reorganized debtor fails to make *any* payment or perform *any* obligation in this plan that the reorganized debtor is required to pay to

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON
SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY
JUDGMENT  - 3

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

1 perform for the claim holder's benefit." [Ex. C: §3.06(A)(5) *emphasis added*].

2 However, from at least April of 2020 to September of 2021—18 months—the Foggs submitted payment to Selene in two separate checks, unilaterally determining that to be sufficient [Ex. F, 51: 21-25]. These checks were returned by Selene as partial payments insufficient to cure the default. [Ex. F, 52: 1-6]. In deposition, Edward Fogg admitted to not paying the amount set by the Plan nor the Loan. [Ex. E, 54-5: 12-25,1-15]. He also admitted calculating escrow payments himself, instead of paying as determined by Selene. [Ex. E, 53: 2-16]. Also, Mr. Fogg knew that Selene used predictive models for determining escrow payments [Ex. E, 57: 20-25]. Mr. Fogg was not concerned that his choice—to unilaterally determine the method and sum of payment— contributed to his default status. [Ex. E, 56: 14-25].

**C.  QWRs and Refinancing.**

The Foggs contacted Selene numerous times via Qualified Written Requests (QWR). QWRs are a method to obtain information from the lender, requiring them to respond within a certain timeframe. 12 USC § 2605(e)(1)(B). Edward Fogg drafted the QWRs to Selene and kept track of their responses. [Ex. E, 94: 17-19]. Although their responses were not in accord with what the Foggs wanted to hear, Selene responded timely to every QWR sent by the Foggs. [Ex. E, 94: 20-25].

In April of 2020, Mr. Fogg wrote and sent a QWR to Selene under the belief that Selene had reported delinquencies on the Foggs' credit report.[Ex. H, 6]. Within a month, Selene responded to Mr. Fogg's QWR stating that they had not reported adverse information concerning the Foggs to the credit bureaus. [Ex. H, 7: ¶ 3]. The letter also noted that the Foggs were 5 months delinquent at the time of the letter's writing. [Ex. H, 7: ¶ 4]. The Foggs remained in delinquency with Selene for 18 months—a year and half—but they never inquired with Selene what arrears payment would remove them from delinquency status. [Ex. F, 51: 21-25; Ex. E, 114: 12-15].

In October of 2021, the Foggs attempted to refinance the mortgages on their rental

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON
SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY
JUDGMENT - 4

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

1  properties at a lower rate by obtaining a *Fannie Mae/Freddie Mac* qualifying loan. [Ex. E, 118: 4-
2  7]. The Foggs were able to secure refinancing, but not at the rates they would have preferred. [Ex
3  E, 118: 1-7]. Instead, the Foggs obtained refinancing at the same interest rate as was ordered in
4  their Plan, 4.5%. [Ex. E, 118: 8-10]. Mr. Fogg formulated a spreadsheet in response to
5  interrogatories with his understanding of his perceived loss from refinancing at 4.5%. [Ex. G]. The
6  Foggs' inability to obtain refinancing at their desired rate is the only damage the Foggs attribute to
7  Selene. [Ex. E, 121-22: 14-25, 1-13].

### III.  ARGUMENT

A party may move for summary judgment by identifying each claim on which summary judgment is sought. FRCP 56(a). The party seeking summary judgment bears responsibility for informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).

The Court should enter an order dismissing this case and entering judgment in favor of Selene Finance, LP and Wilmington Savings Fund Society, FSB for the following reasons: (1); Selene adjusted the Property's mortgage account to the Foggs' Plan; (2) the Foggs unilaterally changed their payment terms contributing to their own delinquency; (3) Selene timely responded to all of the Foggs' QWRs; and (4) the only damage the Foggs attribute to Selene is speculative. As a matter of law, Defendants are entitled to summary judgment.

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON
SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY
JUDGMENT  - 5

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

**A.     Selene Adjusted Payment Pursuant to the Foggs' Chapter 11 Plan.**

Selene aligned the Property's account in accordance with the Plan. In their complaint, the Foggs allege that their Plan was breached by Selene who refused to align the Loan to the Plan, but Selene adjusted the Loan and notified the Foggs of such in its June 12, 2020 letter. [Ex. D, 1:¶ 2-3]. Selene also credited the Foggs with payments remitted to prior Loan servicer Fay, just as the Foggs had requested. [Ex. D, 1:¶ 7]. The modification aligning the Loan to the Plan was effective back on June 12, 2020, but it seems Mr. Fogg had other concerns at the time, namely Selene's Agent, Dominique Bailey. In his letter to Selene, Mr. Fogg says:

> I have instructed my attorney to now proceed with a lawsuit now against Selene. It was supposed to be against Fay, but since you own candidate for employee of the year your employee Dominique Bailey basically called me stupid. Stupid is what stupid does. See you in court, bring that bitch Dominique that laughed at me. We will see who gets the last laugh. [Ex. J, 4: ¶ 3].

The crux of this lawsuit is not that Selene didn't align the Loan with the Plan; Selene aligned the Loan with the Plan stated. The crux of this lawsuit is revenge against an agent who found herself on the wrong side of Mr. Fogg.

Selene adjusted payment for the Property's account in accordance with the Plan and credited past payments remitted to the prior servicer. There is no damage here; accordingly, summary judgment is proper as to Plaintiff's First, Second, Third, and Sixth Claims.

**B.     The Foggs Unilaterally Changed Payment Terms Causing their Own Delinquency.**

By sending Selene two checks instead of one check and calculating escrow themselves, the Foggs knew they were causing their own problems but yet they continued their intransigence. The Loan's terms clearly dictate (1) a periodic payment is principal, interest, *plus* escrow, and (2) Selene is responsible for calculating the escrow payment. [Ex. B: ¶ (O), ¶ 3]. However, for at least 18 months, the Foggs mailed two checks to Selene disregarding the Loan's terms. [Ex. F, 51: 21-25]. Also, the Foggs calculated their own escrow payment, usurping Selene's responsibility as

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY JUDGMENT - 6

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

dictated by the Loan's terms. [Ex. E, 53: 2-16]. Selene exercised its right to return both checks to the Foggs, in accordance with the Loan's partial payment policy. [Ex. B: ¶ 1].

At no time, did the Foggs care that they may be wrong about sending two checks and calculating escrow themselves, even during the 18 months that checks were being returned to them within the same month. If returning two checks per month was not enough notice, Selene even explicitly notified the Foggs that remitting two separate checks will worsen the Foggs' account standing:

> With regard to your payment submissions . . . our records indicate that you are remitting your monthly payments in two (2) amounts, a partial payment for the monthly principal and interest amount and a partial payment for the monthly tax and insurance amount. Selene does not recommend that you remit partial payments, as less than one complete monthly mortgage installment will not advance the due date of your account and is subject to rejection, resulting in additional fees that may be assessed to you account. [Ex. D, 2: ¶ 8].

It may have been worded as a "recommendation," but the consequence for not following it is that the Foggs' account "will not" advance. When asked whether he was concerned that not following the payment terms was contributing to the confusion with his account, Mr. Fogg said that was his "least concern". [Ex. E, 56: 14-20]. The Foggs knew that sending two checks and calculating their own escrow payment was a problem, but they didn't "believe it should create an issue," even though it obviously did. [Ex. E, 96: 5-11].

Even though they had plenty of notice from Selene, the Foggs stubbornly chose not to believe that unilaterally changing the Loan's payment terms was the very cause of their delinquency. [Ex. E, 97: 12-18]. It is undisputed that the Foggs unilaterally changed both the payment terms and escrow provisions causing their account's delinquency; therefore, there is no damage here by Selene and summary judgement should be granted to it for Plaintiff's Fourth and Sixth Claims.

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON
SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY
JUDGMENT - 7

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

**C.      Selene Timely Responded to all of the Foggs' QWRs.**

Selene made timely responses to all of the Foggs' QWRs. Mr. Fogg drafted the QWRs to Selene and kept track of their responses. [Ex. E, 94: 17-19]. The issue lies not in whether Selene responded, but in the Foggs' reception of Selene's responses. As discussed *supra,* Selene told the Foggs they were delinquent because the Foggs insisted on breaking the Loan's terms and sending two checks. The responses were not in accord with what the Foggs wanted to hear, but they were responses nonetheless. [Ex. E, 95: 2-4]. Selene responded timely to every QWR sent by the Foggs. [Ex. E, 94: 20-25]. As in the other claims, no damage by Selene exists here, so the Court should grant Defendant's motion for summary judgement as to Plaintiff's Fifth and Seventh Claims.

**D.      The Only Damage the Foggs attribute to Selene is Speculative and Fails as a Matter of Law.**

The Foggs sustained no damages as a result of Selene's alleged conduct. Assuming Selene did later report the Foggs as delinquent for purposes of summary judgment, it was only after ample notice and opportunity to cure the default, which the Foggs declined to do. As such, it is the Foggs that are responsible for any negative reporting of credit. But even assuming Selene did report adverse credit information, and assuming that it was Selene's fault and not the Foggs, the Foggs still fail to prove any compensable damages.

It is a well settled principle that damages means reasonable expenses and losses, and not speculative losses or profits. *See* RCW 64.40.010; *see also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S. Ct. 248, 75 L. Ed. 544 (1931)("rule precluding recovery of uncertain damages applies to damages which are not certain result of wrong.")*; Griffin v. Colver,* 16 N.Y. 489, 495 (1858) (damages must be certain, both in their nature and in respect to the cause

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON
SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY
JUDGMENT - 8

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

from which they proceed).

The Foggs' *sole allegation of damage* is that they should have refinanced dozens of their properties at a lower rate but for the adverse credit reporting. [Ex. E, 121-22: 14-25, 1-13]. The damage model is entirely speculative. [Ex. G]. The reasons for this are numerous but to list a few:

- The model is pure speculation on any number of issues.
- As soon as interest rates change again, the Foggs can refinance again; Mr. Fogg admitted to as much in his deposition. [Ex. E, 119: 19-22].
- Also, the Foggs did carry through with refinancing their loans at the *same* interest rate, 4.5%, as their Plan. [Ex. E, 118: 1-10].
- The Foggs' entire argument concerning refinancing is based on Mr. Foggs' brief discussions with a few brokers, most of whom he cannot even remember and one being a friend with whom he grew up. [Ex. E, 104-5: 11-25, 1-15].
- Neither did the Foggs ever consider paying off their arrears, which would have set them in better financial standing to refinance. [Ex. E, 108: 1-24].

The Foggs' only claimed damage of missing out on a desired refinancing rate is from an uncertain model consisting of brief conversations. Accordingly, the Court should grant the Defendant's motion for summary judgement as to Plaintiff's Second, Third, and Fourth Claims.

## IV.  CONCLUSION

The Foggs unilaterally changed their mortgage payment terms and then blamed Selene for finding them delinquent. After 18 months of returned checks and explicit notices to not remit two checks for payment, the Foggs ignored Selene's warnings. However, Selene adjusted the Foggs' Loan payments pursuant to their Plan, credited them for past payments, and responded to each of the Foggs' QWRs. The only remaining damage the Foggs' blame Selene for is not obtaining a

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY JUDGMENT  - 9

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

desirable interest rate when the whole time they had the power to remove themselves from arrears and follow the terms of their Plan and Loan; this is not damage as recognized by law.

This case has more to do with Mr. Fogg's encounter with Selene's agent, then it does with any actions on the part of Selene. Accordingly, the Court must grant summary judgment in favor of Defendants, Selene Finance, LP and Wilmington Savings Fund Society, FSB.

DATED this 31st day of January, 2023.

KLINEDINST PC

By */s/ Gregor Hensrude*
Gregor A. Hensrude, WSBA #45918
Klinedinst PC
1200 Fifth Avenue, Suite 1750
Seattle, WA 98101
(206) 682-7701
ghensrude@klinedinstlaw.com
Attorney for Defendants

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY JUDGMENT - 10

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400

# CERTIFICATE OF SERVICE

I, Monica J. Roberts, hereby certify that on the date below, I electronically filed the foregoing document via the ECF system, which transmits notice via ECF system to the following:

| ***Attorneys for Plaintiff*:**<br>John D. Nellor (WSBA #9101)<br>Nellor Law Office<br>201 NE Park Plaza Drive, Suite 202<br>Vancouver, WA  98684<br>jd@nellorlaw.com | ☒ Service via ECF |
|---|---|

DATED this 31st day of January, 2023, at Seattle, Washington.

    */s/ Monica J. Roberts*
Monica J. Roberts, Legal Assistant
Klinedinst PC
1200 Fifth Avenue, Suite 1750
Seattle, WA 98101
(206) 672-4400
mroberts@klinedinstlaw.com

DEFENDANTS SELENE FINANCE, LP AND WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION FOR SUMMARY JUDGMENT  - 11

Case No.3:21-cv-5351-BHS

KLINEDINST PC
1200 Fifth Avenue, Suite 1750
Seattle, Washington 98101
Telephone: (206) 672-4400