UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD FOGG, ET AL.,

Plaintiffs,

v.

SELENE FINANCE LP, ET AL.,

Defendants.

CASE NO. 3:21-cv-05351-JHC

ORDER

## I

## INTRODUCTION

Before the Court is Defendants' motion for summary judgment. Dkt. # 13. For the reasons below, the Court DISMISSES with prejudice all the federal claims. And because the Court declines to exercise jurisdiction over the remaining state-law claims, the Court REMANDS the case to the Clark County Superior Court of the State of Washington.

## II

## BACKGROUND

Edward and Maria Fogg own and manage a property located in Vancouver, Washington. Dkt. # 1-1 at 5 (complaint). In 2009, the Foggs executed a promissory note and deed of trust in

connection with the property. *Id.* Wilmington Savings Fund Society, FSB currently holds the promissory note, and Selene Finance, LP currently acts as the loan's servicer. *Id.* at 5–6.

A little over a decade ago, the Foggs filed for Chapter 11 bankruptcy. Dkt. # 14-3. The bankruptcy plan that followed modified the terms of the loan: It stated that the interest rate would be 4.5% per annum, and that the monthly installment of principal and interest (excluding escrow costs) would be $602.05. Dkt. # 1-1 at 6*; see also* Dkt. ## 16-7 at 3, 14-3.

The Foggs have had a rocky relationship with Selene since Selene began servicing their loan. Most importantly here, the Foggs allege that Selene failed to respond to their written statements (known as "qualified written requests" or "QWRs") alleging account errors and requesting additional information. *See generally* Dkt. ## 1-1; 16. The Foggs also contend that Selene impermissibly reported delinquencies to credit reporting agencies, that Selene failed to adjust their loan to reflect the modified payment schedule imposed by the bankruptcy plan, and that Selene improperly refused their method of payment (which used two checks instead of one). *Id.*

In April 2021, the Foggs filed this action in Clark County Superior Court. Dkt. # 1-1. The complaint appears to assert two federal causes of action under the Real Estate Settlement and Procedure Act (RESPA): (1) a cause of action based on "Selene's failure or refusal to timely respond to plaintiffs' Qualified Written Requests," and (2) a cause of action based on "Selene's false report to credit reporting agencies that plaintiffs' [*sic*] were in default." Dkt. # 1-1 at 11–12.[1] The Foggs remaining causes of action sound in state law, including breach of the promissory note/deed of trust, breach of the duty of good faith and fair dealing, and violation of

[1] The Foggs' brief states in passing that Defendants' conduct violates the Fair Credit Reporting Act (FCRA). Dkt. # 16 at 3. But the complaint does not state a cause of action under FCRA. *See generally* Dkt. # 1-1. So the only federal causes of action in this case concern RESPA.

the Washington Consumer Protection Act (Washington CPA). *Id.* In May 2021, Defendants removed the action to this Court based on federal question jurisdiction. Dkt. # 1.

In April 2022, this case was reassigned to the undersigned judge. Dkt. # 9. And in January 2023, Defendants filed the motion for summary judgment at issue here. Dkt. # 13.

## III

## DISCUSSION

### A. Federal RESPA Claims

RESPA requires loan servicers to timely respond to "qualified written requests" ("QWRs") from borrowers. A QWR is a "written correspondence" from a borrower that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Within 30 days of the receipt of a QWR (subject to a limited 15-day extension, *id.* § 2605(e)(4)), a servicer must take one of four actions: (1) respond with a written explanation for why the servicer believes the account is correct, *id.* § 2605(e)(2)(B)(i), (2) respond with a written explanation containing the information requested, *id.* § 2605(e)(2)(C)(i), (3) respond with a written explanation for why the information requested cannot be obtained, *id.*, or (4) make the corrections to the account requested by the borrower, followed by a written explanation of that correction, *id.* § 2605(e)(2)(A). In addition, RESPA prohibits a servicer from providing certain information to credit reporting agencies while it responds to a borrower's QWR:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency.

*Id.* § 2605(e)(3).

The Foggs assert two causes of action under RESPA: (1) a cause of action based on "Selene's failure or refusal to timely respond to plaintiffs' Qualified Written Requests (fifth and seventh causes of action[2]), and (2) a cause of action based on "Selene's false report to credit reporting agencies that plaintiffs' [*sic*] were in default" (fourth cause of action). Dkt. # 1-1 at 11–12. Defendants are entitled to summary judgment on both theories of RESPA liability.

1. Alleged Failure to Timely Respond to QWRs

The Foggs first argue that Selene violated RESPA by failing to timely respond to their QWRs. The Court disagrees.

The Foggs sent Selene a number of QWRs. Dkt. # 14-5 at 17. But the Foggs concede that Selene responded to each QWR in a timely manner. Edward Fogg confirmed this during his deposition:

> Q: Okay. And you sent more than one QWR to Selene; correct?
>
> A. I did, sir.
>
> Q. Okay. And they responded to all of those; correct?
>
> A. Yes.
>
> Q. And with extensions, all of the responses to your QWRs were timely; were they not?
>
> A. They were timely. . . .

Dkt. # 14-5 at 17–18. Based on this admission, Selene satisfied its obligation to respond to QWRs in a timely manner under RESPA. *See* 12 U.S.C. § 2605(e).

The Foggs nevertheless contend that Selene's responses do not satisfy RESPA because Selene made "inconsistent, confusing statements" or otherwise did not address the issues raised

[2] The fifth and seventh causes of action are identical.

in the QWRs. Dkt. # 16 at 14–15. The crux of the Foggs' argument is that they "disagreed with some or most of" Selene's responses to the QWRs. Dkt. # 14-5 at 18.

But this does not state a claim under RESPA. First, while the Foggs say that Selene did not address the issues raised in the QWRs, their brief does not identify a single issue that went unaddressed. Their brief does not, for example, point to a request in any QWR that went unanswered in Selene's corresponding response. Merely providing a laundry list of documents—without specifically identifying how Selene's responses were incomplete—is insufficient. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs." (citation omitted)).

Second, the Foggs fail to show that Selene's responses were misleading, confusing, or incorrect. The Foggs provide a long, out-of-order list of statements made by Selene when responding to the QWRs. Dkt. # 16 at 14. But they do not explain how any of those statements were incorrect or confusing. Without explanation, it is difficult for the Court to understand what, exactly, the Foggs find improper about the information Selene provided.[3]

But the Court can discern at least one possible inconsistency: In at least one response to a QWR, Selene may have provided incorrect information about the principal amount due. In a May 18, 2020 letter, Selene incorrectly stated that the monthly principal amount due was $658.69. Dkt. # 16-15 at 2.[4] In fact, under the bankruptcy plan, the amount due for principal and interest could not exceed $602.05 per month. Dkt. # 16-7 at 3.

[3] For example, the Foggs assert that several documents state a total balance on the account that relies on an incorrect monthly amount. Dkt. # 16 at 14–15. But the Foggs do not explain how those total amounts are incorrect.

[4] The May 18 letter says that it was written in response to the Foggs' correspondences on April 26, 2020 and May 1, 2020. But it does not appear that the parties have provided a copy of this correspondence. So the Court cannot determine whether the Foggs explained the balance error to Selene with sufficient clarity to enable Selene to respond accurately.

But this alone does not suffice under RESPA. Selene recognized this balance mistake and corrected it less than a month later. In a letter dated June 10, 2020, Selene stated that it "agrees with Mr. Fogg" and determined "that the mortgage account was not correct as ordered by the bankruptcy court." Dkt. # 16-16 at 2. In a June 12, 2020 letter, Selene said that it "review[ed]" the Fogg account and "completed the necessary adjustments to [the] account to align with the terms of the [bankruptcy] Order." Dkt. # 14-4 at 2. And the Foggs present no argument that a mistake in a response to a QWR constitutes a per se RESPA violation, even when that mistake is promptly corrected. *Cf.* 12 U.S.C. § 2605(e)(2)(B)(i) (when a servicer believes an account to be accurate, the servicer must provide "a statement of reasons for which *the servicer believes* the account of the borrower is correct *as determined by the servicer*" (emphasis added)).

Accordingly, Defendants are entitled to summary judgment on this RESPA claim.

2. Alleged Reporting to Credit Agencies

The Foggs assert that Selene violated RESPA by providing false reporting to credit reporting agencies. Dkt. # 1-1 at 11. The Court disagrees.

As described above, RESPA prohibits a servicer from providing certain information to credit reporting agencies while it responds to a borrower's QWR:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency.

12 U.S.C. § 2605(e)(3).

The Foggs have failed to demonstrate a material issue of fact as to whether Selene impermissibly reported credit information to any consumer reporting agency. The Foggs' brief points to no evidence that Selene did, in fact, submit negative information to a credit agency (nor

did they present any legal or factual argument that such negative reporting occurred in violation of RESPA). *See, e.g.*, *Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1133 (D. Haw. 2012) (criticizing a complaint because it "fail[ed] to describe when and to whom [the servicer] allegedly provided the [credit] information"). Their brief does not, for example, identify how any such reports hurt their credit, or whether any such reports were filed within the 60-day non-reporting period of RESPA. To the contrary, Selene's brief suggests (Dkt. # 13 at 4) that it sent a letter in May 2020 indicating that Selene had *not* sent any adverse information to the credit reporting agencies.[5] *See* Dkt. # 14-8 at 8 ("Upon review of the account, our records do not indicate Selene reported adverse information to the major credit reporting agencies."). With no evidence that Selene reported information to credit agencies in violation of RESPA, the Foggs' claim fails.

Even assuming that Selene sent negative information to credit agencies in violation of RESPA, the Foggs' claim still suffers a fatal flaw: The Foggs have failed to demonstrate that they suffered actual damages *flowing from* the alleged RESPA violations. This is a requirement of the statute. In the absence of a pattern or practice of noncompliance with RESPA (which the Foggs have not shown), the statute authorizes only "actual damages" that flow "as a result of the" RESPA violation. *See* 12 U.S.C. § 2605(f)(1) (emphasis added)); *see also Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Under RESPA, a borrower may not recover actual damages for nonpecuniary losses."); *id.* (to recover under RESPA, a plaintiff must show that their actual damages are "a direct result of the failure to comply" with the statute).

[5] But it is unclear from either party's brief whether Selene submitted information to credit reporting agencies *after* this letter was sent.

The Foggs' brief does not discuss any damages sustained as a result of any alleged RESPA violations (and as noted, the Foggs do not explain how Selene allegedly violated RESPA's bar on disclosure). But as described in Defendants' briefing (Dkt. # 13 at 8–9; Dkt. # 17 at 2–4), the Foggs' primary damages argument is that any alleged negative credit reporting affected their ability to obtain more favorable financing terms on their properties. Without further explanation or evidence, however, such a damages claim is speculative: The Foggs have not pointed to any evidence that they could have obtained better financing terms but-for Selene's alleged RESPA violations.[6]

Accordingly, Defendants are entitled to summary judgment on this RESPA claim.

B. State-Law Claims

When a court has subject matter jurisdiction over one or more claim, it may exercise supplemental jurisdiction over related state-law claims. *See* 28 U.S.C. § 1367(a). But a court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (quoting *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

[6] The Court's conclusion as to the lack of non-speculative damages applies *only* to the RESPA claims. The Court expresses no opinion as to whether the Foggs can demonstrate damages for any state-law claims.

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

The Court declines to exercise jurisdiction over the remaining state-law claims. Selene removed this case based on federal question jurisdiction (Dkt. ## 1 at 2; 1-2), and all federal claims have now been dismissed. *See Carnegie-Mellon*, 484 U.S. at 350 n.7; 28 U.S.C. § 1367(c). Declining to exercise jurisdiction over the remaining claims is particularly appropriate here because neither party provided meaningful, detailed briefing about the state-law claims (for example, the briefs lack discussion of the elements of each claim).

This is not to say that the Foggs' claims have no merit. The Court is puzzled by Selene's position that the Foggs breached the terms of their loan when it appears that the Foggs paid *more* than the amount due each month but did so in two checks (instead of one) in a single envelope. But Washington state courts are better equipped to consider this issue and the other state-law issues raised in the motion for summary judgment.

When, as here, a court declines to exercise jurisdiction over any remaining state-law claims, it may dismiss the claims without prejudice or remand the case to state court. *See Carnegie-Mellon*, 484 U.S. at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). The Court concludes that the principles of "economy, convenience, fairness, and comity" favor remand. *Id.* Accordingly, the Court remands the case to the Washington state court.

## IV

## CONCLUSION

For the reasons above, the Court DISMISSES with prejudice all federal claims and REMANDS the remaining state-law claims to the Clark County Superior Court of the State of Washington. The Court STRIKES as moot the pending motion in limine (Dkt. # 18). The Clerk is DIRECTED to transmit a certified copy of this order and the record in this case to the Clark County Superior Court of the State of Washington.

Dated this 27th day of March, 2023.

John H. Chun
United States District Judge